**LITE DEPALMA GREENBERG & RIVAS, LLC**
Bruce D. Greenberg
Jennifer Sarnelli
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
bgreenberg@ldgrlaw.com
jsarnelli@ldgrlaw.com

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

————————————————————  )
                                                        )
Rosemarie Zavolta, on behalf of            )
herself and all others similarly situated,  )     Civil Action No.
                                                        )     08-cv-04546-WJM-MF
                    Plaintiff,                       )
                                                        )
          vs.                                          )
                                                        )
Lord Abbett & Co. LLC and Lord          )   **Motion Returnable: August 3, 2009**
Abbett Distributor LLC,                      )
                                                        )
                    Defendants.                   )
————————————————————  )


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## Table of Contents

I. Introduction..................................................................................................1

II. Allegations of the Complaint ...........................................................3

III. Argument ..................................................................................6

   A.  Ms. Zavolta Has Standing to Bring The Claim Asserted .........................6

      1.  Burden of Proof ..............................................................7

      2.  Ms. Zavolta Suffered an Injury-In-Fact as a Result of Her
         Purchase of Class A Shares..............................................8

      3.  The Complaint Adequately Alleges Reliance................................12

   B.  Plaintiff States a Valid Claim Under §10(b) and Rule 10b-5.................17

      1.  Pleading Requirements of Rule 9(b) and the PSLRA....................17

      2.  Defendants Omitted Material Facts From the Lord Abbett
         Prospectuses That They Had a Duty to Disclose ..........................18

         a.  Defendants Had a Duty to Disclose the
            Omitted Information ...........................................19

         b.  The Omitted Information Is Material...................................26

      3.  Plaintiff Has Adequately Pleaded Scienter ...................................29

         a.  Defendants Designed the Product and Created the
            Misleading Prospectuses.......................................30

         b.  Defendants Knew of the Intense Regulatory Scrutiny
            Arising From Improper Sales of Class B Mutual Fund
            Shares ...............................................................33

         c.  The Complaint Contains Sufficient Allegations From
            Which to Draw a Strong Inference of Collective Scienter ..36

      4.  In the Alternative, Leave to Amend Should be Permitted.............38

   IV.  CONCLUSION..............................................................................39

# **Table of Authorities**

## **Cases**

*Affiliated Ute Citizens of Utah v. United States,*
   406 U.S. 128 (1970) ...................................................................................... 13, 14

*Alpharma Inc. Sec. Litig.,*
   372 F.3d 137 (3d Cir. 2004) .................................................................................18

*Alston v. Parker,*
   363 F.3d 229 (3d Cir. 2004) .................................................................................38

*Alten v. Atlantic Financial Federal,*
   805 F. Supp. 5 (E.D. Pa. 1992)....................................................................... 15, 16

*Atchley v. Qonaar,*
   C.A. No. 81 C 6295, 1982 WL 1313 (N.D. Ill. Mar. 29, 1982) *rev'd on other*
   *grounds*, 704 F.2d 355 (7th Cir. 1983) .......................................................... 8, 10

*Ballan v. Wilfred American Educational Corp.,*
   720 F.Supp. 241 (E.D.N.Y. 1989)........................................................................27

*Ballentine v. U.S.,*
   486 F.3d 806 (3d Cir.2007) ...................................................................................7

*Barows v. Chase Manhattan Mortg. Corp.,*
   465 F.Supp.2d 347 (D.N.J. 2006)........................................................................17

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988) ............................................................................... 14, 19, 26

*Beascoechea v. Sverdrup & Parcel and Associates, Inc.,*
   486 F. Supp. 169 (E.D. Pa. 1980).......................................................................11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................................................8

*Benzon v. Morgan Stanley*,
420 F.3d 598 (6th Cir. 2005) ......................................................................... 23, 24

*Birnbaum v. Newport Steel Corp.*,
193 F.2d 461(2d Cir. 1952), *cert. denied,* 343 U.S. 956 (1952) .................... 9, 11

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ..............................................................................14

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ..............................................................................................9

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001).........................................................................17

*Cross v. Dickstein Partners*,
172 F.R.D. 108 (S.D.N.Y. 1997).........................................................................17

*Edens v. Goodyear Tire & Rubber Co.*,
858 F.2d 198 (4th Cir. 1988) ..............................................................................14

*Hackford v. First Security Bank*,
521 F. Supp. 541 (D. Utah 1981) ........................................................................10

*Holmes v. Bartlett*,
C.A. No. 03-1176-AS, 2004 WL 793190 (D. Or. Mar. 30, 2004)........................8

*Huddleston v. Herman & MacLean*,
640 F.2d 534(5th Cir. 1981), *aff'd in relevant part and rev'd in part on other grounds*, 459 U.S. 375 (1983) ..............................................................................3

*Ieradi v. Mylan Laboratories, Inc.*,
230 F.3d 594 (3d Cir. 2000) ...............................................................................27

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ......................................................................... 29, 33

*In re Aetna Inc. Sec. Litig.*,
34 F. Supp. 2d 935 (E.D. Pa. 1999).....................................................................19

*In re Bristol-Myers Squibb Sec. Litig.*,
   No. Civ. 00-1990, 2005 WL 2007004 (D.N.J. Aug. 17, 2005)............................21

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir.1997) .......................................................................38

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002) ........................................................................29

*In re Countrywide Fin. Corp. Sec. Litig.*,
   No. CV-07-05295-MRP, 2009 WL 943271 (C.D. Cal. Apr. 6, 2009) .................37

*In re Data Access Systems Sec. Litig.*,
   103 F.R.D. 130 (D.N.J. 1984) ......................................................................17

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ................................................................ 8, 16

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003)...........................................................11

*In re Hopkins*,
   372 B.R. 734 (E.D. Pa. 2007) ......................................................................38

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007).................................................................29

*In re Par Pharmaceutical Securities Litig.*,
   Civ. No.  06-3226, 2008 WL 2559362 (D.N.J. Jun. 24, 2008) ...........................38

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   930 F. Supp. 68 (S.D.N.Y. 1996) ...................................................................2

*In re Regal Commc'ns Corp. Sec. Litig., C.A.* ,
   No. 94-179, 1995 WL 550454 (E.D. Pa. 1995)..................................................15

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*,
   184 F.3d 280 (3d Cir. 1999) ........................................................................34

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ................................................................18

*In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*,
    233 F.R.D. 421 (E.D. Pa. 2006) ......................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .............................................. 15, 17

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ............................................................29

*James v. Gerber Products Co.*,
    483 F.2d 944 (6th Cir. 1973) ................................................. 9, 10, 11

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) .......................................................13

*Lance v. Coffman*,
    549 U.S. 437 (2007) ...........................................................................8

*Ley v. Visteon Corp.*,
    543 F.3d 801 (6th Cir. 2008) ..........................................................33

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................... 32, 36

*McLean v. Alexander*,
    599 F.2d 1190 (3d Cir. 1979) .................................................. 29, 33

*Murray v. US Bank Trust National Association*,
    365 F.3d 1284 (11th Cir. 2004) .......................................................11

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) ..........................................................33

*Norris v. Wirtz*,
    719 F.2d 256 (7th Cir. 1983) ............................................................9

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) ........................................................................... 19, 28

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...............................................................................7, 8

*Plan v. Penn Mutual Life Ins. Co.*,
698 F.2d 320 (7th Cir. 1983) ........................................................................ 11, 12

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*,
C.A. No. C 01-20418 JW, 2004 WL 5326262 (N.D. Cal. May 27, 2004) ..........17

*Retsky Family Limited P'ship v. Price Waterhouse LLP*,
C.A. No. 97 C 7694, 1999 WL 543209 (N.D. Ill. July 23, 1999).......................15

*Ross v. Abercrombie & Fitch Co.*,
C.A. No. 2:05-cv-00819, 2009 WL 1424002 (S.D. Ohio May 21, 2009) 9, 15, 16

*Scott v. DiGuglielmo*,
Civ. No. 08-16632009 WL 1175608 (E.D.Pa. May 1, 2009) ...............................7

*SEC v. Mayhew*,
121 F.3d 44 (2d Cir.1997) .................................................................................26

*Shahin v. Darling*,
606 F. Supp.2d 525 (D.Del. 2009) .......................................................................7

*Shamberg v. Ahlstrom*,
111 F.R.D. 689 (D.N.J. 1986) ............................................................................17

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ..............................................................................33

*Siemers v. Wells Fargo & Co.*,
No. C.A. 05-04518 WHA, 2006 WL 2355411
(N.D. Cal. Aug. 14, 2006) ..................................................................... 20, 21, 28

*South Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .............................................................................29

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ...............................................................................37

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008) ................................................................................36

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499 (2007) ...................................................... 18, 29, 30

*Travelers Cas. and Sur. Co. of America v. U.S.*,
   75 Fed. Cl. 696 (Fed. Cl. 2007)...........................................................................16

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) .............................................................................................26

*U.S. v. Rocky Mountain Holdings, Inc.*,
   C.A. No. 08-3381, 2009 WL 564437 (E.D. Pa. Mar. 4, 2009) ...........................38

*Ulferts v. Franklin Res., Inc.*,
   554 F.Supp.2d 568(D.N.J. 2008), *reconsideration denied*,
   567 F. Supp. 2d 678 (D.N.J. Jun. 30, 2008) ................................................. 24, 25

*Ulferts v. Franklin Resources, Inc.*,
   567 F. Supp. 2d 678 (D.N.J. 2008)................................................................ 19, 25

*Vannest v. Sage, Rutty & Co., Inc.*,
   960 F. Supp. 651 (W.D.N.Y. 1997) .....................................................................10

*Wendt v. Keenan & Clarey, Inc.*,
   C.A. No. 3-85-1029, 1986 U.S. Dist. LEXIS 17378 (D. Minn. Nov. 21, 1986) .10

*Winer Famly Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ................................................................................37

## I.      <u>INTRODUCTION</u>

Plaintiff Rosemarie Zavolta purchased class A shares of Lord Abbett mutual funds (the "Lord Abbett Funds" or "Funds") in an aggregate amount of less than $50,000, paying an upfront sales commission, or front-end load, of 5.75%. Payment of the front-end load reduced plaintiff's initial investment, costing her substantially more than if she had invested in class B and/or C shares that are not subject to a front-end load, but rather charge investors a back-end contingent deferred sales charge if they redeem their shares within a certain period of time.

Like thousands of others, Ms. Zavolta made this investment through her employer-sponsored 401(k) plan. That plan is funded by contributions from plaintiff consisting of a portion of her compensation being allocated into her individual 401(k) account, matching contributions from her employer, and the reinvestment of dividends received by plaintiff from Fund investments.

Unbeknownst to plaintiff and the investing public, by purchasing class A shares in an aggregate amount of less than $50,000, she was guaranteeing that her investment would, under all circumstances, time and market conditions, produce a lower return than the exact same investment in either class B or C shares (otherwise identical) because of the way defendants structured the investment products.  The simple mathematical fact is that because of the upfront cost and structure of defendants' investment products, the class B and C shares will *always*

outperform the A shares for investments of less than $50,000.  In other words, no rational investor, informed of the true material facts, would ever purchase class A shares for an investment of less than $50,000, rather than B or C shares.

The defendants cannot deny any of these allegations.  Instead, they argue that despite plaintiff's actual monetary damage from her purchase, she has no remedy because her employer allowed only class A shares to be included in the 401(k) plan, and her employer has no remedy because it did not purchase this investment.  Defendants thus contend that there is no recourse under the securities laws despite the misleading information provided in the Fund prospectuses.

The fact that defendants designed these products and sold them through a prospectus that included the words "Class B shares *may* be an appropriate investment option, if you plan to invest less than $50,000 . . ." (Defendants' Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 30)(emphasis added), is of no moment because they knew that class A shares were never an appropriate investment for less than $50,000, which was materially misleading to plaintiff and thousands of others.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.") (citing

*Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), *aff'd in relevant part and rev'd in part on other grounds*, 459 U.S. 375 (1983)).

The undisputed fact is that no reasonable investor would ever purchase class A shares for an investment of less than $50,000 if told one simple fact: it will never perform as well as the exact same investment in either B or C shares.  The only plausible explanation is that plaintiff, like thousands of other similarly situated investors, was misled by defendants' prospectuses.

## II.   ALLEGATIONS OF THE COMPLAINT

The Lord Abbett Funds are multi-class mutual funds designed and sold by defendants, and are central to the total investment products offered by defendants. Complaint ("Compl.") at ¶ 22.  To take advantage of intense public scrutiny and a regulatory crackdown on mutual fund companies and broker/dealers ("B/Ds") for deceptive marketing and sales practices associated with class B shares -- recommending the purchase of large sales of class B shares (over $100,000) without adequately disclosing information about their relative costs -- defendants formulated a scheme to promote class A shares of Lord Abbett Funds as the best low-cost, long term investment at all share levels. *Id.* at ¶¶ 4, 19-21, 37, 61.

To exploit investors' growing apprehension towards class B shares, defendants distributed misleading Fund prospectuses that were designed to deceive reasonable investors, including plaintiff and the Class, and to drive them to

purchase the lower performing, but more profitable for defendants, class A shares. *Id*. at ¶¶ 21, 36, 58. The Fund prospectuses accomplished this by failing to disclose material information and to falsely present class A shares as the best performing share class for the long-term, even though for investments in aggregate amounts under $50,000, where a sales charge of 5.75% applies, class A shares were *never* an investor's best choice. *Id.* at ¶¶ 1, 3, 21, 38.

Defendants disclosed to investors only half of the investment picture. For instance, defendants' Fund prospectuses went to great lengths to showcase how class A shares were the least expensive share class for long-term investments by presenting: (1) fee tables comparing total annual fund operating expenses for the three share classes, conveniently portraying class A shares as having the lowest annual operating expenses (*id*. at ¶¶ 39-40); (2) expense examples comparing the estimated expenses (including commissions) for each of the three share classes on investments of $10,000 at a 5% rate of return for specified holding periods (*i.e*., 1, 3, 5, 10 years), that depicted class A shares as having the lowest annual operating expenses (*id*. at ¶¶ 41-42); (3) financial highlights that depicted class A shares as the best performing class, with the highest past returns over a five year period (*id*. at ¶¶ 43-45); (4) sales compensation paid to financial institutions for selling the share classes and servicing shareholder accounts in such a way that suggests class A shares resulted in the lowest percentage of 12b-1 fees (*id*. at ¶¶ 47-48, 64); and

(5) performance tables implying that class A shares resulted in the highest historical returns (*id*. at ¶¶ 71-78).

The information that Fund prospectuses failed to disclose would have alerted reasonable investors to the inescapable conclusion that, for sales under $50,000, class A shares were never the best investment as compared to class B and/or C shares. Specifically, material information demonstrating the relative account values of each share class for holding periods of 1, 3, 5, and 10 years, with a 5% rate of return, for a $10,000 investment, was used to showcase how class A shares resulted in the lowest operating fees and expenses. *Id*. at ¶¶ 50-53.  Indeed, comparing the total fees and expenses for each of the three share classes with their corresponding account values would have clearly demonstrated that investment of $50,000 or less in class A shares resulted in account values that were never the highest for any possible holding period. *Id*. at ¶¶ 49-53.  Defendants clearly knew how each of the three share classes performed as evidenced by illustrations in Fund prospectuses, albeit incomplete and misleading. *Id*. at ¶ 45.

Similarly, Fund prospectuses failed to disclose that B/D commission arrangements were structured to increase sales of class A shares by providing B/Ds (and their registered representatives) with substantial financial incentives for sales of class A shares. *Id*. at ¶¶ 32-35, 61-66.  Fund prospectuses further omitted any information regarding the important differences and conflicts in dealer

commissions among the three share classes, portraying class A shares as having the lowest 12b-1 fees.  *Id*. at ¶¶ 70-71.  And, completing their material omissions, performance tables included in Fund prospectuses failed to account for the change in class B share fees upon class B shares converting to class A shares after eight years, because doing so would have revealed that the performance of class A shares would never match that of class B shares.  *Id*. at ¶¶ 75-76.

The substantial profits realized by defendants on sales of class A shares as compared to class B and/or C shares motivated defendants to convince investors, through materially misleading information in Fund prospectuses, that class A shares were a superior investment to class B and/or C shares.  Defendant omitted material information clearly showing that, for investments under $50,000, whether short-term or long-term, class A shares' lower annual expenses would never overcome the effect of the initial sales load payable with the purchase of class A shares, and thus class A shares would never be the best performing share class.

### III.   <u>ARGUMENT</u>

### A.   <u>Ms. Zavolta Has Standing To Bring The Claim Asserted</u>

Defendants attack Ms. Zavolta's standing on the basis that she is not the purchaser of the securities and she did not make the relevant investment decision.  Def. Mem. at 9-12.  Defendants' standing theory is flawed, however, and, if it were to be accepted, no one would have standing to bring the claim asserted in the

Complaint.  As explained in more detail below, defendants confuse the concepts of

standing and reliance, both of which Ms. Zavolta has adequately alleged.

### 1.   <u>Burden of Proof</u>

A motion to dismiss for lack of standing is properly brought pursuant to

Federal Rule of Civil Procedure 12(b)(1), "because standing is a jurisdictional

matter." *Scott v. DiGuglielmo,*Civ. No. 08-1663, 2009 WL 1175608, *2 (E.D.Pa.

May 1, 2009) (citing *Ballentine v. U.S.,* 486 F.3d 806, 810 (3d Cir.2007)).   Where,

such as here, the defendant has raised a facial challenge under 12(b)(1), the

standards for a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) apply. *Shahin v. Darling*, 606 F. Supp.2d 525, 533 -34 (D.Del. 2009).

The Third Circuit has recently articulated the standard for deciding a Rule

12(b)(6) motion.  *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).  On

such a motion to dismiss, the facts alleged must be taken as true and a complaint

may not be dismissed merely because it appears unlikely that the plaintiff can

prove those facts or will ultimately prevail on the merits.  *Id.* at 231.  Further,

> "[S]tating…a claim requires a complaint with enough factual matter (taken
> as true) to suggest" the required element. This "does not impose a
> probability requirement at the pleading stage," but instead "simply calls for
> enough facts to raise a reasonable expectation that discovery will reveal
> evidence of" the necessary element.

*Id.* at 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).  Here, plaintiff has sufficiently alleged that she has standing as shown below.

### 2. Ms. Zavolta Suffered an Injury-In-Fact as a Result of Her Purchase of Class A Shares

The elements of standing under Article III of the United States Constitution are "an injury in fact, causation and redressability."  *Lance v. Coffman*, 549 U.S. 437 (2007).  Ms. Zavolta satisfies these elements.  She has clearly suffered an injury traceable to the defendants' conduct, and her status as a beneficial owner of the mutual fund shares held by the 401(k) plan does not change this result.  In fact, courts have consistently held that beneficiaries have standing to assert claims based on purchases or sales that are made through a plan trustee.  *See, e.g., Holmes v. Bartlett*, C.A. No. 03-1176-AS, 2004 WL 793190, at *2 (D. Or. Mar. 30, 2004) (beneficiaries of 401(k) plan, as well as plan trustee, had standing to assert claims based on purchases of securities); *Atchley v. Qonaar*, C.A. No. 81 C 6295, 1982 WL 1313, at *2 (N.D. Ill. Mar. 29, 1982), *rev'd on other grounds*, 704 F.2d 355 (7th Cir. 1983) ("one who buys securities through another agent or trustee is not outside the protection of § 10(b) and Rule 10b-5" so as to "preclude a principal or beneficiary from asserting, alone or with the trustee, a claim against the seller of securities"); *see also In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204 (E.D. Pa. 2008) (the fact that hedge funds' investment adviser had sole discretion to make

investment decisions on their behalf did not change the fact that the funds satisfied the traditional elements of standing: injury-in-fact, causation and redressability).

Ms. Zavolta also easily satisfies the requirement that a plaintiff be a "purchaser" or "seller" of a security to have standing to bring a private cause of action under § 10(b) and Rule 10b-5, pursuant to the rule articulated in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733-35 (1975).  *See also Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir. 1952), *cert. denied*, 343 U.S. 956 (1952).  In applying this rule, courts have used a "logical and flexible construction" of the term "purchaser-seller" in order to "accommodate the avowed purpose of § 10(b) of protecting the investing public and of ensuring honest dealings in securities transactions."  *James v. Gerber Products Co.*, 483 F.2d 944, 948 (6th Cir. 1973).  "While *Blue Chip Stamps* requires a plaintiff to be a purchaser or seller, the decision does not require a high level of participation by the plaintiff in the purchase or sale decision."  *Ross v. Abercrombie & Fitch Co.*, C.A. No. 2:05-cv-00819, 2009 WL 1424002, at *14 (S.D. Ohio May 21, 2009).

Accordingly, beneficiaries have standing as "purchasers" or "sellers" to bring a § 10(b) claim under *Blue Chip Stamps*, even where a trustee is the party that directly purchases or sells the subject securities.  *See, e.g., Gerber*, 483 F.2d at 948 (beneficiary of testamentary trust from which securities were sold had standing to bring securities claim); *Norris v. Wirtz*, 719 F.2d 256, 258, 261 (7th Cir. 1983)

(trust beneficiary had standing under § 10(b) where beneficiary's consent to sell stock was obtained through material misrepresentations); *Atchley*, 1982 WL 1313, at \*2; *Wendt v. Keenan & Clarey, Inc.*, C.A. No. 3-85-1029, 1986 U.S. Dist. LEXIS 17378, \*\*4-5 (D. Minn. Nov. 21, 1986) (beneficial owner had standing as purchaser even though bank purchased the bonds in capacity as trustee of self-directed IRA); *see also Hackford v. First Security Bank*, 521 F. Supp. 541, 549 (D. Utah 1981) (trust beneficiaries were not "bystanders contemplated by *Blue Chip*" because it was stock in which they had a beneficial interest that was sold).

Indeed, a plan beneficiary has standing because she is the beneficiary, not the trustee, who stands "to gain or lose from the purchase and or sale of the securities" and it is for their benefit that the purchase or sale is made. *See Vannest v. Sage, Rutty & Co., Inc.*, 960 F. Supp. 651, 657-58 (W.D.N.Y. 1997) ("Investors in self-directed IRAs have standing as purchasers/sellers to assert claims under the securities laws"). Accordingly, in *Gerber*, the Sixth Circuit concluded that the goals of Rule 10b-5 and *Birnbaum* were "best promoted by providing standing" to the plaintiff under § 10(b), noting that as the trust beneficiary, the plaintiff "was the person who was to be benefitted by the sale and thus she had the interests of a

de facto seller.  In this respect she is much closer to the transaction than the

plaintiffs in the *Birnbaum* case." *Id.* at 948-49.[1]

The cases cited by defendants are inapposite.   In *Murray v. US Bank Trust*

*National Association*, both the beneficiaries and the trustees sought to bring actions

against a third party.  365 F.3d 1284, 1290-92 (11th Cir. 2004).  Based on these

facts, and an absence of a conflict of interest between the trustee and the

beneficiaries, the court determined that the trustee was the proper party and could

represent the interests of the beneficiaries.  *Id.*   Here, Ms. Zavolta's trustee is not

seeking to represent the beneficiaries.  As such, there is no one to protect Ms.

Zavolta's interests.  She, therefore, has standing.

Defendants' reliance on *Peoria Union Stock Yards Ret. Plan v. Penn Mutual*

*Life Ins. Co*., 698 F.2d 320 (7th Cir. 1983), is equally misplaced.  There, the

beneficiaries and the trustee of a defined-benefit plan, where the benefits were

fixed and not subject to investment risk, *id* at 325, collectively sued a third-

---

[1] Based on these facts, Ms. Zavolta also qualifies as a "real party in interest"
pursuant to Rule 17(a) of the Federal Rules of Civil Procedure.  Although the
assets of a 401(k) plan are held in trust for the benefit of participants and are
legally owned by the plan trustee, the permissive language of Rule 17(a) does not
preclude the beneficial owner from suing or joining with the legal title holder.
*Beascoechea v. Sverdrup & Parcel and Associates, Inc.*, 486 F. Supp. 169, 173
(E.D. Pa. 1980); *see also In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 284 F.
Supp. 2d 511, 637 (S.D. Tex. 2003) ("The established rule is that 'nothing in the
real party in interest rule precludes a beneficial owner from commencing an action
or joining an action with the legal title holder, if the beneficial owner has a right
which can be enforced in a court action.'") (internal citations omitted).

party.  While the court questioned whether the plan beneficiaries had standing given that they were guaranteed fixed benefits from the pension plan, it did not reach a conclusion on that issue.  *Id.*  Moreover, by contrast, the 401(k) here was not a fixed benefit, but the benefit of Ms. Zavolta's account depended on its performance.  As such, *Peoria* does not bar Ms. Zavolta's standing.

### 3.    <u>The Complaint Adequately Alleges Reliance</u>

Defendants' argument that the claim should be dismissed because the plan trustee, not Ms. Zavolta, made the relevant investment decision, while couched in terms of standing, is actually a question of reliance.  As explained above, Ms. Zavolta clearly satisfies the standing requirement because she suffered an injury as alleged in the Complaint as a result of her purchase of Lord Abbett shares.  In addition, the Complaint adequately alleges the element of reliance on defendants' material omissions from the Lord Abbett prospectuses.[2]

It is undisputed that Ms. Zavolta made the decision to contribute a portion of her salary to the 401(k) plan for her own benefit and to further permit the plan trustee to channel those funds into certain of the pre-selected mutual funds in

---

[2] To support their contention that plaintiff fails to satisfy the element of reliance under § 10b and Rule 10b-5, defendants have asserted factual contentions outside the Complaint.  Should this Court choose to consider defendant's factual submissions, rather than accept the allegations of the Complaint respecting reliance as true for purposes of the motion to dismiss, then defendants' motion is in effect one for summary judgment, necessitating, in fairness, that plaintiff be granted leave under Rule 56 (f) of the Federal Rules of Civil Procedure to conduct relevant discovery in support of her opposition.

which she chose to invest, and on which investments she suffered the relevant

gains and losses.  It is also undisputed that the plan trustee, acting in its capacity as

Ms. Zavolta's fiduciary and agent, selected the various Lord Abbett funds in which

Ms. Zavolta and the other plan beneficiaries could invest, and chose only the class

A share option.

Based on these facts defendants submit that although Ms. Zavolta had a

choice to invest or not to invest in the Funds, and in which Funds to invest, there

was only one share class that she could have purchased, therefore, she does not

have standing to assert the §10(b) claim.  Def. Mem. at 11-12.  In so arguing,

however, defendants are misstating the relevant inquiry, which is not whether Ms.

Zavolta has standing to bring the claim (which she does), but whether she, through

the plan trustee who was charged with selecting the funds, *relied* on defendants'

material omissions as alleged in the Complaint when making the decision to select

only class A shares.  For purposes of §10(b) reliance, the trustee is presumed to

have relied on these material omissions, and that reliance is properly attributed to

Ms. Zavolta, on whose behalf that investment decision was made.

Under the seminal opinion in *Affiliated Ute Citizens of Utah v. United

States*, the Supreme Court held that a presumption of reliance exists in cases

"involving primarily a failure to disclose [material facts]."  406 U.S. 128, 153-54

(1970); *see also Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000)

(recognizing that the "*Affiliated Ute* presumption of reliance exists in the first place to aid plaintiffs when reliance on a negative would be practically impossible"); *Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir. 1975). "Requiring a plaintiff to show a speculative state of facts, *i.e.*, how he would have acted if omitted material information had been disclosed ... would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market." *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988). "Because of such problems, the Court in *Ute* held that where fraudulent conduct involves 'primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.'" *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 207 (4th Cir. 1988) (quoting *Affiliated Ute*, 406 U.S. at 153).

Based on *Affiliated Ute* and the multitude of cases that have followed, here, the plan trustee, acting as the fiduciary and agent of Ms. Zavolta, is presumed to have relied on defendants' material omissions in deciding which Lord Abbett funds to offer to plan beneficiaries, in addition to which class of shares to offer. Moreover, through her relationship with the plan trustee, this reliance is imputed to Ms. Zavolta -- the party who actually purchased the shares and suffered the harm -- for purposes of satisfying the reliance element of a §10(b) claim.

Indeed, this situation is similar to that of an investor who gives full discretion to a money manager to make investment decisions on his behalf. Courts

have been unwilling to deny such parties the ability to act as a class representative

simply because they did not directly rely on defendants' alleged fraud, since they

"turned over day-to-day investment decisions to professional money managers or

advisors." *Ross*, 2009 WL 1424002, at *14; *see also In re Vicuron*

*Pharmaceuticals, Inc. Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) (pension

funds were not unfit to serve as class representative because they "abdicated" their

investment decisions to money managers or other professionals); *In re WorldCom,*

*Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (argument that named

plaintiffs' claims are atypical because they relied on the advice of investment

managers was "swiftly rejected"); *Retsky Family Limited P'ship v. Price*

*Waterhouse LLP*, C.A. No. 97 C 7694, 1999 WL 543209, at *6 (N.D. Ill. July 23,

1999) ("the fact that Retsky himself did not actually make the purchase [but an

investment advisor did] does not preclude a finding of the fact of adequacy"); *In re*

*Regal Commc'ns Corp. Sec. Litig.*, C.A. No. 94-179, 1995 WL 550454, at *5 (E.D.

Pa. 1995) (finding argument that individual plaintiffs "maintained totally

discretionary accounts with their brokers and therefore it was impossible for them

to have relied on the market … defies common sense" and noting that "[r]eliance

on the advice of third parties such as brokers is not uncommon").

    Similarly, in *Alten v. Atlantic Financial Federal*, 805 F. Supp. 5, 6 (E.D. Pa.

1992), the court held that the plaintiffs' reliance on their accountants, who relied

on misrepresentations and omissions contained in a report prepared by the

defendant auditors, could be "imputed" to the plaintiffs through their relationships

with the accountants for purposes of a fraudulent misrepresentation claim.  There,

like here, the plaintiffs fell into the "category of foreseeable users who rel[ied]" on

defendant's statements or omissions, thus satisfying the reliance requirement.  *Id.*

at 7.  ("It is foreseeable that the [accountants' report] was created for the benefit of

potential investors.  It is also foreseeable that Plaintiffs, as lay investors, would

seek the financial guidance of personal accountants."); *see also Travelers Cas. and

Sur. Co. of America v. U.S.*, 75 Fed. Cl. 696 (Fed. Cl. 2007) (subcontractor's

reliance on contract imputed to prime contractor).[3]

Furthermore, the question of whether the plan trustee would have selected

only class A shares as an option, had the trustee known that the lower yielding

option was being selected for certain beneficiaries is, a question of fact

necessitating discovery.  Courts have found that similar factual questions of

reliance are not proper for determination at the class certification stage, let alone

---

[3] Even if this Court were to view the question of whether or not Ms. Zavolta made
the investment decision as a question of standing, at least two other courts have
explicitly held that plaintiffs did not lack standing to bring a §10(b) claim simply
because their investment advisers had sole discretion to make investment decisions
on their behalf.  *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. at 204 (there was "no
dispute" that the funds' satisfied the traditional elements of standing – injury-in-
fact, causation, and redressability); *Ross*, 2009 WL 1424002, at *13 ("There is no
evidence that the [Supreme] Court intended or anticipated *Blue Chip Stamps* to
preclude the claims of plaintiffs who rely upon professional investment advisors.").

on a motion to dismiss.  *See, e.g., Plumbers & Pipefitters Local 572 Pension Fund*

*v. Cisco Systems, Inc.,* C.A. No. C 01-20418 JW, 2004 WL 5326262, at \*3 (N.D.

Cal. May 27, 2004) (delegating investment decisions to investment managers does

not render a proposed class representative atypical, noting that the issue is "largely

premature and unpersuasive at the class certification stage") (citing *In re*

*WorldCom. Inc. Sec. Litig.,* 219 F.R.D. 267, 282 (S.D.N.Y. 2003)); *Cromer*

*Finance Ltd. v. Berger*, 205 F.R.D. 113, 132 (S.D.N.Y. 2001); *Cross v. Dickstein*

*Partners*, 172 F.R.D. 108, 114 (S.D.N.Y. 1997); *In re Data Access Systems Sec.*

*Litig*., 103 F.R.D. 130, 139 (D.N.J. 1984); *Shamberg v. Ahlstrom*, 111 F.R.D. 689,

688 (D.N.J. 1986).[4]

### B.   Plaintiff States a Valid Claim Under §10(b) and Rule 10b-5

Defendants offer multiple arguments that Ms. Zavolta fails to state a claim.

Defendants' arguments fail in all respects.

### 1.   Pleading Requirements Of Rule 9(b) and the PSLRA

Plaintiffs alleging fraud under § 10(b) of the Exchange Act must meet the

heightened pleading requirements of F.R.C.P. 9(b) by pleading the "who, what,

---

[4] Furthermore, by couching their argument as one of Article III standing, instead of reliance, defendants have impermissibly asserted factual contentions outside the Complaint.  These additional facts should not be considered by the Court in deciding this motion to dismiss.  *See Barows v. Chase Manhattan Mortg. Corp.*, 465 F.Supp.2d 347, 355 (D.N.J. 2006) ("In reviewing a Rule 12(b)(6) motion, a court must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.").

when, and where" of the conduct alleged.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).  In addition, the PSLRA requires that a § 10(b) plaintiff "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" and plead the required state of mind with particularity. 15 U.S.C. § 78u-4(b)(1) and (2); *Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 147 (3d Cir. 2004); *Suprema*, 438 F.3d at 276.

When faced with a Rule 12(b)(6) motion to dismiss a §10(b) action, the court must accept all factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). The inquiry is whether *all* the facts, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, in isolation, meets that standard.  *Id.*

As set forth more fully below, plaintiff has set forth strong allegations supporting the inference of scienter as to defendants and has pled facts with particularity relating to defendants' misstatements. These allegations are sufficient to survive defendants' motion to dismiss.

### 2. Defendants Omitted Material Facts From the Lord Abbett Prospectuses That They Had a Duty to Disclose

Defendants argue that Ms. Zavolta fails to allege any actionable omissions from the prospectuses because defendants had no duty to disclose the omitted information and certain of the alleged omissions are not material.  Def. Mem. at

15-32.  This argument is without merit, and the authority that the defendants use to support this position is not convincing.

### a.     Defendants Had a Duty to Disclose the Omitted Information

An omission is actionable under the federal securities laws when it pertains to material information that a defendant has a duty to disclose to make "statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b); *see also Basic,* at  485 U.S., 239 n. 17.  Such a duty may arise when a statute or regulation requires such disclosure or when disclosure is necessary to clarify otherwise inaccurate, incomplete, or misleading statements.  *See Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000); *Ulferts v. Franklin Resources, Inc.*, 567 F. Supp. 2d 678, 680 (D.N.J. 2008).  This duty exists "when disclosure is necessary to make defendants' other statements, *whether mandatory or volunteered,* not misleading."  *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 948 (E.D. Pa. 1999) (emphasis added).

As alleged in the Complaint, defendants made a series of misleading disclosures in the prospectuses for the Lord Abbett funds about, among other things, the relative costs associated with investing in each class of shares offered by the funds.  Compl. ¶¶ 40, 41, 44, 47.  These disclosures were misleading in the absence of additional, material information regarding, among other things, the relative account values of investments in each share class.  Defendants had a duty

to disclose this additional information because, without it, the affirmative statements made in the prospectuses were inaccurate, incomplete, and/or misleading. *See, e.g., Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *5 (N.D. Cal. Aug. 14, 2006) ("Defendants had a duty to state all facts that were necessary to make their affirmative statements not misleading.").

First, defendants had a duty to disclose information about the relative account values of investments in the principal share classes in light of defendants' material misstatements (contained in the "fee table," "expense example," "financial highlights" section, and "sales compensation" section) depicting class A shares as the least expensive share class for long-term investments. Compl. ¶¶ 40, 41, 44, 47, 59. Without the omitted information, these disclosures were inaccurate, incomplete, and misleading, because, for investments under $50,000, class A shares were never the investment best choice, for any holding period. *Id.* ¶ 48.

Defendants' argument that prospectus language that "Class B shares *may* be an appropriate investment option, if you plan to invest less than $50,000 . . ." fails. Def. Mem. at 30. These disclosures do not reveal the essential fact that *for investments under $50,000,* class A shares are *never* in the best interest of any rational investor *for any holding period*. Moreover, based on the information provided, no rational investor could have reached that conclusion. As this Court has held, "a defendant may choose silence or speech based on the then-known

factual basis, but cannot choose half-truths." *In re Bristol-Myers Squibb Sec. Litig.*, No. Civ. 00-1990, 2005 WL 2007004, at *23 (D.N.J. Aug. 17, 2005) ("[E]ven objectively true statements can be actionable" if "Defendants omitted material information that rendered a facially true statement false or misleading"); *see also Siemers*, 2006 WL 2355411, at *5.  That is, however, precisely what Lord Abbett chose to do here.

Defendants also had a duty to disclose that Lord Abbett and the B/Ds who sold the funds' shares had a powerful financial incentive to sell class A shares, as opposed to class B or C shares.  Compl. ¶¶ 61-62.[5]  Defendants' illusory reference to adviser commissions in the relevant prospectuses, as set forth in ¶ 63 of the Complaint, necessitated disclosure of additional, material information regarding the details of the commission arrangements between Lord Abbett and the financial firms that sold their shares. *Id.* ¶¶ 33, 65-66, 69.  Indeed, this material conflict of interest, which, unbeknownst to investors, existed at the point of sale, directed Class members away from purchasing the best share class for them, to the substantial benefit of Lord Abbett and the B/Ds that sold the shares.  *Id.* ¶70.

Finally, defendants had a duty to disclose the fact that because class B shares convert to class A shares after eight years, the B share, not the A share, has the

---

[5] For example, in the first year of a common $40,000 trade, a broker-dealer would receive commission and trail payments of approximately $2,100 for the sale of class A shares, $1,600 for class B shares, and $400 for class C shares. *Id.* ¶ 66.

highest returns after ten years.  *Id*. ¶ 76.  This disclosure was required to clarify the

statements made in the performance tables that portrayed class A shares as

providing higher investor returns after ten years than either class B or C shares,

which, unbeknownst to investors, defendants calculated without accounting for the

mandatory conversion of class B shares to class A shares at year eight.  *Id*. ¶ 75.  In

order to make this disclosure not misleading, defendants should have accounted for

the mandatory conversion or, at the very least, disclosed that this conversion was

not accounted for in the performance table calculations.  *Id.*  ¶¶ 76-78.

       Defendants also had a duty to disclose the omitted information under S.E.C.

Form N-1A.  This form sets forth the baseline disclosures that a mutual fund

prospectus must contain and provides, among other things, that such a prospectus

"should clearly disclose the fundamental characteristics and investment risks" of

the fund so that "an average or typical investor who may not be sophisticated in

legal or financial matters" is able to compare and contrast it to other funds and to

evaluate whether to purchase its shares. *Id.*  ¶¶ 15-16.  Significantly, Section

C.1.(d) of the instructions to Form N-1A states that the prospectus requirements

contained therein "allow for variance in disclosure or presentation" depending on

the circumstances.  *Id.* ¶ 16.  In other words, mutual fund companies must go

beyond the baseline disclosures when necessary to make the information required

to be disclosed not misleading.

Defendants violated their disclosure duties under Form N-1A by failing to disclose material information about the relative account values of investments in the different share classes, making it impossible for investors to make fully-informed investment decisions. *Id.* ¶ 58.  As alleged in the Complaint, the fee and expense structures for the funds were designed in such a way that lower cost did *not equate* to higher account value. *Id.* ¶ 58.  As a result, the baseline disclosures regarding costs required by Form N-1A were not enough in this circumstance to provide investors with all of the information necessary to make informed investment decisions.  *Id.* ¶ 58.  Defendants had a duty, therefore, pursuant to § C.1.(d) of the form, to provide the additional information regarding the value of prospective investments in each share class.  *Id.* ¶ 51.

In support of their argument, defendants mistakenly place heavy reliance on *Benzon v. Morgan Stanley*, 420 F.3d 598 (6th Cir. 2005).  However, not only is this Court not bound to follow a Sixth Circuit case, but the claims pled in the Complaint are fundamentally different than those alleged in the *Benzon* case.  In *Benzon*, the court decided that the defendants had no duty to disclose that their brokers received greater compensation for sales of a certain share class and for selling the operators' funds rather than funds offered by other companies.  *Id.* at 611.  The court also rejected the plaintiff's argument that the defendants failed to meet Form N1-A's requirements of a "'balanced disclosure of positive and

negative factors' and a clear explanation of the features of different share classes"

by failing to disclose that class B shares are always inferior to at least one of either

class A or class C shares.  *Id.* at 608 (internal citations omitted).

Unlike the material omissions alleged in the present case, the omitted

disclosures at issue in *Benzon* were not required because all of the information

needed to choose the best share class was available in the relevant prospectuses. *Id.*

Thus, unlike in *Benzon* -- where prospective investors did not need additional

information to determine which share class was best -- here, the alleged omissions

made it impossible for plaintiff and other class members to decipher which share

class to purchase, since costs (which were disclosed) are not a proxy for account

values (which were not disclosed) with respect to the Lord Abbett funds.

Furthermore, unlike in *Benzon,* here, the Complaint clearly alleges that

defendants' failure to disclose the omitted information rendered defendants'

affirmative statements false and misleading and details each of those misleading

statements.  *Benzon* emphasized that the plaintiff failed to allege, among other

things, any affirmative statements that were rendered misleading by nondisclosure

of the omitted information.  420 F.3d at 612.

Similarly, in *Ulferts v. Franklin Res., Inc*., 554 F.Supp.2d 568, 575 (D.N.J.

2008), *reconsideration denied*, 567 F. Supp. 2d 678 (D.N.J. Jun. 30, 2008), another

case on which defendants rely, this court found that the plaintiff put forth no

evidence or allegation that disclosure of certain "shelf-space arrangements was necessary to clarify misleading statements already made."  Instead, the court found that the complaint in *Ulferts* merely alleged that the prospectuses and statements "failed to disclose" the shelf-space arrangements and did not "reprint or summarize portions of the prospectuses or statements that would allow the Court to infer such a necessity."  *Id.*  It is for these reasons that this court concluded that "[w]ithout so much as an allegation that Defendants' prospectuses and statements contained misleading information that necessitated disclosure of the shelf-space arrangements for clarification," it would "not find that the Defendants had such a duty of disclosure."  *Id.*

The allegations that this court found lacking in *Ulferts* are present here. Ms. Zavolta' not only alleged that defendants failed to disclose material information, but set forth in detail what that information was and why that information was necessary to clarify the misleading statements made therein.  *See*, *e.g.*, Compl.¶¶ 55, 71, 77.  Moreover, plaintiff extracted the relevant portions of the prospectuses alleged to be misleading, and set forth in detail the additional information necessary to make those statements not misleading, including, among other things, a table setting forth the respective account values for investments in each share class.  *Id.* ¶¶ 40, 41, 44, 47, 51, 52, 63, 67, 69, 74.

### b.     The Omitted Information Is Material

Defendants do not challenge the materiality to investors in mutual funds of knowing how one share class will perform relative to other share classes.  Instead, defendants focus on the materiality of the historical performance tables, which purport to compare share class performance over the past 1, 3, 5 and 10 years.  But the Complaint demonstrates that the historical performance tables were deceptive in that they failed to reflect that, after eight years, class B shares were converted to class A shares, thereby taking advantage of class A's lower annual operating expenses.  Thus, the historical tables make B shares look worse than they actually were.  This omission was material; a reasonable investor would want to know, all other things being equal, how share classes perform against one another.

An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available."  *Basic*, 485 U.S. at 231-32 (quoting *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)).  "To be material, the information need not be such that a reasonable investor would necessarily change his investment decision based on the information," *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir.1997), Instead, the inquiry is whether a reasonable investor would have considered it significant in making investment decisions.  *See Basic*, 485 U.S. at 231.  Moreover, materiality is an

intensely factual issue, and the Third Circuit has held that "where there is room for differing opinions on the issue of materiality, the question should be left for jury determination." *Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594, 599 (3d Cir. 2000); *see also Ballan v. Wilfred American Educational Corp.*, 720 F.Supp. 241, 249 (E.D.N.Y. 1989). Accordingly, accepting all of the allegations in the Complaint as true, whether the allegedly omitted information would be material to a reasonable investor is not appropriately determined at this stage.

Nevertheless, the Ms. Zavolta has adequately alleged, for purposes of this motion to dismiss, that defendants' failure to account for the conversion of class B shares to class A shares in the performance tables, as well as their failure to disclose that the performance results do not reflect this conversion, is highly material to any rational investor. Indeed, if this information, as well as information about the applicable sales loads,[6] had been disclosed, investors would have known that total returns for class B shares are actually higher than for class A shares for any holding period. Compl. ¶45. Instead, the financial highlights tables falsely present class A shares as the share class with the highest returns. *Id.* at ¶¶44 - 45. Certainly any rational investor would have considered average returns "important"

---

[6] It is noteworthy that while the investment performance tables do not state that the class B to A conversion is unaccounted for, they *do* state that the applicable sales loads are not being accounted for. Based on this, any rational investor would assume that the conversion is considered in the performance results, in the absence of any disclosure to the contrary.

and thus "material" in deciding which class of shares to purchase. *Oran*, 226 F.3d at 282; *see also Siemers*, 2006 WL 2355411, at *6.

Furthermore, contrary to defendants' contentions, all of the information necessary for a rational investor to compare the share classes was not available in the prospectuses. To the contrary, material omissions in the relevant prospectuses made it impossible for class members to determine that class A shares were never in their best interest.[7] If defendants had disclosed all essential information in this regard, no rational investor who was investing amounts up to $50,000 would have purchased class A shares during the Class Period for any anticipated holding period. Compl. ¶4. Moreover, the fact that defendants provided some, albeit incomplete, discussion of the performance of each share class and related information in the prospectuses shows the materiality of the omissions themselves, including the effect of the conversion of class B to class A shares after eight years. Accordingly, Ms. Zavolta has adequately alleged materiality.

### 3.   Plaintiff Has Adequately Pleaded Scienter

---

[7] Defendants also contend that the prospectus omissions are immaterial because Class members could have gathered the omitted information from the mutual fund expense analyzer on the FINRA Web site. Investors, however, were not required and should not have been expected to consult and rely on either the expense analyzer (which, in any event was not available until the midpoint of the Class Period) or the *New York Times* article to decipher that class A shares were never an appropriate investment option for them, particularly since the prospectuses for the funds themselves provided the exact opposite information.

To successfully plead scienter, a plaintiff must allege that the defendant engaged in conscious misbehavior or recklessness. *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 282 (D.N.J. 2007). As the Third Circuit has observed, a reckless statement is one that "'presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999) (quoting *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979)).

The PSLRA does not require that allegations of scienter be "irrefutable, *i.e.*, of the 'smoking-gun' genre." *Tellabs,* 127 S. Ct. at 2510. Instead, the pertinent question is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id.* at 2509 (emphasis in original); *see also Institutional Investors*, 564 F.3d at 273 ("The inferential significance of any single allegation can be determined only by reference to all other allegations."). Thus, the Court's analysis ultimately rests "on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter." *Institutional Investors*, 564 F.3d at 269; *see also South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("*Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation."); *In re Cabletron*

*Sys., Inc.*, 311 F.3d 11, 32 (1st Cir. 2002) ("Each securities fraud complaint must be analyzed on its own facts; there is no one-size-fits-all template.").  A tie thus goes to the plaintiff.  *Tellabs*, 127 S.Ct. at 2513.

Under the facts as pleaded in the Complaint, it is "at least as likely as not" that defendants engaged in conscious or at least reckless misbehavior.

### a.    Defendants Designed The Product And Created The Misleading Prospectuses

The entire premise of Ms. Zavolta's case is the performance of Lord Abbett's core product, designed by defendants and marketed through the dissemination of prospectuses and other materials created by defendants.  Compl. ¶13.  Because defendants created the product, they knew precisely how the product performs with respect to each class of shares.  This fact is demonstrated quite clearly by the language of the prospectus itself.

As alleged in the Complaint, defendants placed in the prospectus a table identifying the projected expenses and historical returns associated with different classes of mutual funds.  *Id.* ¶¶ 41, 44.  To obtain the values included in these tables, defendants necessarily ran projections and computations that would have shown asset values and the impact of sales loads on class A shares in amounts under $50,000.  Thus, defendants had to have known that, for investments under $50,000, class A shares are never the best or preferable investment – a material fact that they failed to disclose to investors. *Id.* ¶¶ 4, 21.  Indeed, defendants now

admit that class A shares are not suitable for investments of less than $50,000.[8]

Def. Mem. at 39.

Furthermore, if defendants were able to project expenses for a hypothetical $10,000 investment with a 5% return over 1, 3, 5, and 10 year periods, (Compl. ¶ 41), they were plainly aware of the projected net returns of such an investment based on those calculations.  Indeed, defendants surely knew that net returns would be much more important to a prospective investor than the projected costs of investing in the different share classes, since even if one share class's "costs" were more than another, an investor would still prefer that share class if the net returns were greater.  Thus, each of these calculations was certainly known to defendants and should have been disclosed to investors.

Further inferences of scienter arise from defendants' awareness of the fees and commissions associated with class A shares.  As set forth in the Complaint, Lord Abbett designed the commission arrangements to encourage the sale of class A shares over class B or class C shares.  Compl. ¶¶ 62, 63, 64.  Lord Abbett Distributor then collected the sales loads and other fees and paid sales and service compensation to those who sold the shares.  Compl. ¶ 23.  Defendants' intimate knowledge of the funds' fees and commission structure means defendants knew (or

---

[8] As discussed in section III.2.a., above, the minimal disclosures contained in the prospectus and SAIs failed to inform investors that for investments under $50,000, class A shares are never the best choice of any investor for any holding period. Thus, such disclosures do not negate a strong inference of scienter.

could only have been reckless in not knowing) the negative impact that those fees and commissions would have on investment returns in class A shares valued at less than $50,000 as compared to class B – another material fact that they failed to disclose.  Compl. ¶¶ 24-31.

Scienter can furthermore be inferred from Lord Abbett's knowledge of investor behavior.  The Complaint alleges that Lord Abbett possessed empirical and statistical data, including data in its own audited financial records, establishing that investors do not actually hold class A shares for the long term.  Compl.  ¶¶ 79-83.  Indeed, Lord Abbett knew of the actual redemption rates for class A shares and the impact that such rates have on firm profitability.  Compl. ¶ 84.  Armed with the knowledge that investors would not realistically achieve their aspirational goals of long-term investing, Lord Abbett nevertheless promoted class A shares as proper investments to increase company profits, encouraging Class members to purchase class shares known to be less profitable.  Compl. ¶¶ 37, 85-86.  In fact, Lord Abbett earned much higher profits – often 15% to 50% more – on sales of class A shares than on sales of either class B or class C shares.  Compl. ¶ 33.

Taken as a whole, the Complaint sets forth ample allegations giving rise to the strong inference that defendants consciously disseminated misleading statements regarding a core Lord Abbett product.  *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709-10 (7th Cir. 2008) (finding that false statements

regarding a company's key products raise the strong inference that some member of company's senior management who was involved in authorizing or making statements knew that they were false); *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 424-25 (5th Cir. 2001) (finding strong inference of scienter was pleaded where "one product company" disseminated false statements related to the product's patent). Moreover, the cases cited by defendants do not involve management's knowledge of its core product and are thus easily distinguished. *See Ley v. Visteon Corp.*, 543 F.3d 801 (6th Cir. 2008) (alleged misstatements did not involve a core company product designed by the named defendants); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) (same); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) (same); *McLean*, 599 F.2d 1190 (same).

### b.   Defendants Knew of the Intense Regulatory Scrutiny Arising From Improper Sales of Class B Mutual Fund Shares.

Further inferences of defendants' scienter arise from the regulatory environment surrounding the sale of mutual funds. *Tellabs*, 127 S.Ct. U.S. at 2509 (court is to take holistic approach to evaluating allegations of scienter). As set forth in the Complaint, mutual funds have been subjected to intense regulatory scrutiny, specifically in relation to improper sales practices associated with Class B shares. Compl. ¶ 19. The National Association of Securities Dealers ("NASD") and the Financial Industry Regulatory Authority ("FINRA") have disseminated several public notices regarding improper sales practices associated with class B

shares.  Such notices include a News Release dated June 25, 2003, announcing

enforcement actions for class B mutual fund sales abuses and noting that "[t]oday's

enforcement action puts brokers on notice that investors must be sold an

appropriate class of mutual fund."  *See*

http://www.finra.org/Newsroom/NewsReleases/2003/p002901 (attached hereto as

Exhibit A to the Affidavit of Jennifer Sarnelli ("Sarnelli Aff.")).[9]

In another public notice dated August 12, 2003, the NASD announced five

additional enforcement actions focusing on the sale of class B mutual fund shares,

stating as follows:

> In each of the settled cases, the brokers violated NASD's suitability
> rule by recommending their customers purchase of B share mutual
> funds instead of A shares. The purchase of A shares would have
> eliminated or reduced front-end sales charges through breakpoint
> discounts available at various dollar amounts; resulted lower ongoing
> expenses than those available through B shares; and would have
> avoided the contingent deferred sales charges associated with B
> shares. The differences between A and B share mutual funds are
> explained more fully in an Investor Alert recently published by
> NASD: Investor Alert - Class B Mutual Fund Shares: Do They Make
> the Grade?
>
>  "In recommending mutual funds with different classes to investors,
> the broker must put his customer first. It is critical that a broker
> consider the costs of A shares versus B shares for the customer, and
> not the profit for the broker," said Mary L. Schapiro, NASD Vice

---

[9] Regulatory actions were referenced in the Complaint.  Thus, the Court may consider material relating to the regulatory actions in ruling on the pending motion. *See In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (noting that material relied upon in the complaint may considered without converting a motion to dismiss into a motion for summary judgment).

> Chairman and President of Regulatory Policy and Oversight. "NASD will continue to bring sales practice cases such as these when investors are sold mutual fund products that are unsuitable."

See http://www.finra.org/Newsroom/NewsReleases/2003/p002885 (attached hereto as Exhibit B to Sarnelli Aff.).  *See also*

http://www.finra.org/Investors/ProtectYourself/p013641  (FINRA notice regarding enforcement actions arising from improper recommendations to purchase Class B and Class C mutual fund shares) (attached hereto as Exhibit C to Sarnelli Aff.); http://www.finra.org/Investors/ProtectYourself/InvestorAlerts/MutualFunds/p005975 (investor alert published by FINRA warning investors to exercise caution when purchasing Class B shares) (attached hereto as Exhibit D to Sarnelli Aff.).

As alleged in the Complaint, this intense regulatory scrutiny and ensuing enforcement actions related to class B shares led many mutual fund companies to significantly limit or entirely eliminate class B shares.  Compl. ¶ 20.  Under the guise of protecting investors, and in an effort to fly under FINRA's radar, investment companies such as Lord Abbett have since focused their efforts on increasing sales of class A shares to all investors, despite the mathematical certainty that class A shares are never a wise investment in amounts under $50,000.  Compl. ¶ 21.

Given the widespread dissemination of information regarding class B regulatory actions, a strong inference arises that defendants were well aware of the

regulatory scrutiny associated with selling class B shares and that as a result, defendants have intentionally pushed to increase sales of class A shares even when not appropriate.  Given this regulatory environment, defendants' promotion of the class A shares for investments under $50,000 cannot be summarily accepted as merely innocent or negligent conduct.

### c.     The Complaint Contains Sufficient Allegations From Which to Draw A Strong Inference of Collective Scienter

The PSLRA does not require Ms. Zavolta to assert claims against individual officers or directors to satisfy the scienter requirement.  To the contrary, where a corporation has made materially false financial statements regarding a key product, courts have found that collective corporate scienter applies.  *See Makor*, 513 F.3d at 710 (holding that "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud"); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (same).

The allegations contained in the Complaint support a strong inference of collective scienter in this case.  As set forth above, the material omissions at issue concern defendants' core company product.  Because defendants designed the product, they necessarily possess intimate knowledge about how the product works and how its performance is impacted by fees, commissions, sales loads, investment amounts, and the like.  Moreover, the Complaint alleges that defendants operate

the Lord Abbett Funds pursuant to a common set of policies and practices.  Compl. ¶ 24.  The Complaint further alleges that defendants market the funds to investors in the same manner, using virtually identical prospectuses created by defendants themselves.  Compl. ¶¶ 12, 23, 24.  Indeed, the prospectuses identify both Lord, Abbett & Co. LLC and Lord Abbett Distributor LLC, and describe in detail the close relationship between them.  *See* Exhibit E to Sarnelli Aff. [10]

Defendants' argument that the Third Circuit rejected the concept of collective scienter in *Winer* is incorrect.  While the *Winer* court did reference *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc*., 365 F.3d 353 (5th Cir. 2004), it did so only in connection with *Southland*'s rejection of the group pleading doctrine, not its analysis of corporate scienter.  *See Winer*, 503 F.3d at 337.

### 4.   <u>In the Alternative, Leave to Amend Should be Permitted</u>

---

[10]  Defendants' reliance on the group pleading doctrine to discount plaintiff's scienter allegations also is misplaced.  The group pleading doctrine "is a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to *officers and directors* who have day-to-day control or involvement in regular company operations."  *Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007) (emphasis added).  The doctrine is inapplicable here, where the Ms. Zavolta does not attempt to attribute liability to individual officers or directors; here, the only named defendants are corporate entities, and the misleading statements at issue are contained in a prospectus that clearly emanated from defendants themselves.  (Plaintiff acknowledges that ¶ 13 of the Complaint inadvertently references group pleading.)  Furthermore, collective scienter permits a strong inference of scienter as to a corporation, even though the allegations fail to raise a strong inference as to any individual acting on the corporation's behalf.  *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP, 2009 WL 943271, at *2 (C.D. Cal. Apr. 6, 2009).

In the event this Court concludes that Ms. Zavolta has failed to state an actionable claim for any reason, plaintiff respectfully requests leave to file an amended complaint to remedy any pleading deficiencies.  *See* F.R.C.P. 15(a) ("leave [to amend] shall be freely given when justice so requires"); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Courts in this Circuit have held that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *see also U.S. v. Rocky Mountain Holdings, Inc*., C.A. No. 08-3381, 2009 WL 564437, at *8 n.7 (E.D. Pa. Mar. 4, 2009) (noting that "courts ordinarily will allow the plaintiff leave to amend the complaint"); *In re Hopkins*, 372 B.R. 734, 742 (E.D. Pa. 2007) ("[E]ven if a complaint is defective in failing to sufficiently plead a claim, leave to amend, rather than dismissal, may be appropriate."). Allowing plaintiff the opportunity to amend will not unduly prejudice the defendants nor would it be futile.  *In re Par Pharmaceutical Securities Litig.*, Civ. No.  06-3226, 2008 WL 2559362, *14 (D.N.J. Jun. 24, 2008).  As such, if the Court is inclined to grant defendants' motion in any respect, Ms. Zavolta respectfully requests leave to replead.

## IV.   <u>CONCLUSION</u>

Plaintiff has demonstrated (i) that she has standing to bring this action; (ii) that defendants had a duty to disclose the projected performance of the three share classes (A, B, C) based on a hypothetical rate of return, the structural and systematic conflicts of interest with investors resulting from defendants' profit structure and commission arrangements, and the historical returns of each class of shares, after accounting for the mandatory conversion of class B shares to class A shares; and (iii) that the omitted information was material.  Accordingly, the Court should deny defendants' motion to dismiss in its entirety.

Dated: June 22, 2009

**LITE DEPALMA GREENBERG & RIVAS, LLC**

<u>*s/ Bruce D. Greenberg*</u>
Bruce D. Greenberg
Jennifer Sarnelli
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Telephone:  (973) 623-3000
Facsimile:  (973) 623-0211
bgreenberg@ldgrlaw.com
<u>jsarnelli@ldgrlaw.com</u>

Robert A. Hoffman
**BARRACK, RODOS & BACINE**
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone:  (609) 773-0104
Facsimile:  (609) 773-0219

Daniel E. Bacine
Lisa M. Lamb
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
dbacine@barrack.com
llamb@barrack.com

Andrew S. Friedman
Tonna K. Farrar
**BONNETT FAIRBOURN
FRIEDMAN & BALINT, P.C.**
2901 N. Central Avenue, Suite #1000
Phoenix, AZ 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
afriedman@BFFB.com
tfarrar@BFFB.com

Howard D. Finkelstein
Jeffrey R. Krinsk
Mark L. Knutson
**FINKELSTEIN & KRINSK, LLP**
501 West Broadway, Ste. 1250
San Diego, CA 92101
Telephone: (619)-238-1333
Facsimile: 619-238-5425
HDF@classactionlaw.com
JRK@classactionlaw.com
MLK@classactionlaw.com

Gregory Melick
**THE MELICK LAW FIRM, LLC**
7222 Marylebury Circle - Suite 100
Columbus, Ohio 43054
Telephone: (614) 775-0998
gregmelick@themelicklawfirm.com

*Attorneys for Plaintiff*