# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ZAVOLTA v. LORD, ABBETT & CO.   )
LLC et al.   )
   )   Civil Action No. 08-cv-04546-WJM-MF
   )
   )
_____)

## <u>REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'</u>
## <u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>

Jeffrey B. Maletta
Nicholas G. Terris
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20005-1600
(202) 778-9100

Christopher A. Barbarisi
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ  07102
(973) 848-4000

*Counsel for Defendants Lord, Abbett &
Co. LLC and Lord Abbett Distributor,
LLC*

Dated:  July 27, 2009

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1):
ZAVOLTA LACKS STANDING ........................................................ 2

    A.    Additional Facts Relevant to Standing .............................. 2

    B.    Zavolta Lacks Standing ................................................. 6

        1.    Zavolta Was Not the Purchaser of Any Lord Abbett Shares ... 6

        2.    The Foreign Traffic Retirement Plan (Not Zavolta) Made the Only Relevant Investment Decision .................................. 8

        3.    The Foreign Traffic Retirement Plan Does Not Have Standing to Raise the Claim Asserted in the Complaint .......... 9

        4.    Zavolta Does Not Allege that She Consulted a Broker or Intended to Be a "Long-Term Investor" ................................... 10

ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6):  THE COMPLAINT FAILS
TO STATE A CLAIM ........................................................................ 10

I.    MOST OF THE COMPLAINT MIRRORS A PLEADING DISMISSED BY THE SIXTH CIRCUIT IN BENZON .................................... 10

II.    PLAINTIFF FAILS TO PLEAD MATERIALITY WITH RESPECT TO HER ALLEGATIONS THAT THE INVESTMENT PERFORMANCE TABLES DO NOT REFLECT THAT CLASS B SHARES CONVERT INTO CLASS A SHARES AFTER EIGHT YEARS ............................................................. 11

III.    THE COMPLAINT FAILS TO PLEAD SCIENTER ................................. 12

    A.    The Complaint's Allegations Do Not Create a Strong Inference ................................................................. 13

B.     The Complaint's Scienter Allegations Are Based on Improper Group Pleading ................................................................... 13

C.     Other Indisputable Facts Undermine Any Possible Inference of Scienter ........................................................................... 14

CONCLUSION ................................................................................. 15

# TABLE OF CITATIONS

## FEDERAL CASES

Ashcroft v. Iqbal, 129 S. Ct. 1937 (May 18, 2009) .......................................... 2, 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).......................................... 11

Benzon v. Morgan Stanley Distribs., Inc., 420 F.3d 598 (6th Cir. 2005).............. 10

Cheyenne Arapaho Tribes of Oklahoma v. U.S.,
558 F.3d 592 (D.C. Cir. 2009) ................................................................................ 6

Conley v. Gibson, 355 U.S. 41 (1957) .................................................................... 11

Cowburn v. Leventis, 619 S.E.2d 437 (S.C. App. 2005)........................................ 7

Federal Recovery Servs, Inc. v. United States,
72 F.3d 447 (5th Cir. 1995)..................................................................................... 2

Fletcher-Harlee v. Pote Concrete Contractors,
482 F.3d 247 (3d Cir. 2007)..................................................................................... 2

Gould Electronics Inc. v. U.S., 220 F.3d 169 (3d Cir. 2000) ................................ 6

Gualandi v. Adams, 385 F.3d 236 (2d Cir. 2004)................................................ 5, 6

Hackford v. First Security Bank, 521 F. Supp. 541 (D. Utah 1981) ........................ 7

In re DVI Inc. Sec. Litig., 249 F.R.D. 196 (E.D. Pa. 2008).................................... 7

In re Merck & Co. Securities Litigation,
432 F.3d 261 (3d Cir. 2005)............................................................................. 11, 12

In re NAHC Sec. Litig., 306 F.3d 1314 (3d Cir. 2002) .......................................... 11

In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,
184 F.3d 280, 290 (3d Cir. 1999) ............................................................................11

Institutional Investors Group v. Avaya, Inc.,
564 F.3d 242 (3d Cir. 2009)................................................................................. 2, 13

Intern. Ass'n of Machs. v. Northwest Airlines, Inc.,
673 F.2d 700 (3d Cir. 1982) ................................................................... 5

Int'l Assoc. of Fire Fighters v. Clayton, 320 F.3d 849 (8th Cir. 2003) .................. 8

James v. Gerber Products Co., 483 F.2d 944 (6th Cir. 1973)................................ 7

Lunderstadt v. Colafella, 885 F.2d 66 (3d Cir. 1989)............................................ 5

Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir. 1992) ........................................... 1

Norris v. Wirtz, 719 F.2d 256 (7th Cir. 1983) ....................................................... 7

Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508 (3d Cir. 1994) ................... 5

Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15 (1st Cir. 1999)........... 5

Shapiro v. UJB Financial Corp., 964 F.2d 272 (3d Cir. 1992) ............................. 12

Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,
128 S. Ct. 2531 (2008) ........................................................................... 7

Ulferts v. Franklin Resources, Inc., 554 F. Supp. 2d 568 (D.N.J. 2008)............... 10

W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,
549 F.3d 100 (2d Cir. 2008)..................................................................... 7

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 52(a)................................................................................. 3

Fed. R. Civ. P. 56(f) ................................................................................. 4

Fed. R. Civ. P. 17(a)................................................................................. 8

## REGULATORY RELEASES AND OTHER MATERIALS

Moore's Federal Practice (3d ed. 2009)...................................................... 3

Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure (2d ed. 1990) ....................................... 8

Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure (3d ed. 2004) ........................................................  3

Restatement (Second) of Trusts § 282(2) & cmt. e (1959)....................................  8

Defendants hereby reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (the "Opposition" or "Opp."). The organization of this Reply Memorandum parallels defendants' opening Memorandum of Law in Support of Defendants' Motion to Dismiss the Class Action Complaint (the "Memorandum" or "Mem."). This Reply Memorandum uses the same abbreviations and defined terms as the Memorandum.

## PRELIMINARY STATEMENT

Plaintiff Zavolta's failure to demonstrate Article III standing is crystal clear. Most notably, it is indisputable (and apparently undisputed) that:

- The relevant investor for purposes of this lawsuit is not plaintiff herself, but plaintiff's former retirement plan.

- The retirement plan invested *more* than $50,000 in Lord Abbett funds. It is thus outside the putative class, which the Complaint expressly limits to those who invest *less* than $50,000.

- Consistent with plaintiff's own theory of the case, Class A shares were the optimal choice for the plan, and neither the plan nor its participants in the aggregate could have been harmed by defendants' supposed wrongdoing.

In short, no litigant before the Court has standing to seek an adjudication of the Complaint's claim of injury to those who invested less than $50,000. The Court need proceed no further, and a new complaint cannot cure the standing issue.[1]

---

[1]    When a sole named plaintiff's claims expire before class certification (and *a fortiori* when she lacked standing from the outset), "dismissal of the action is required." Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992). Accord

Should the Court decide that it can reach the merits, recent controlling decisions in Ashcroft v. Iqbal, 129 S. Ct. 1937 (May 18, 2009), and Institutional Investors Group v. Avaya, Inc., 564 F.3d 242 (3d Cir. Apr. 30, 2009), confirm that plaintiff has fallen far short of complying with applicable strict pleading standards. Plaintiff's suggestion that the Court must afford her an opportunity to replead, Opp. 37-38, is meritless.  Fletcher-Harlee v. Pote Concrete Contractors, 482 F.3d 247, 252 (3d Cir. 2007) ("failure to submit a draft amended complaint is fatal to a request for leave to amend."); L.R. 7.1(f).

## ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1): ZAVOLTA LACKS STANDING

Although plaintiff mischaracterizes defendants' Motion as raising only a facial challenge, Opp. 7, as stated in the Memorandum (p. 7 & n.1), aspects of defendants' 12(b)(1) motion raise a **factual** challenge to plaintiff's standing, and hence to the Court's subject matter jurisdiction.

### A.     Additional Facts Relevant to Standing

Plaintiff all but concedes she may not maintain this lawsuit if the facts are as stated in the Declaration filed with the Memorandum.  What is more, she does not dispute those facts – even though she bears the burden of demonstrating subject

---

Federal Recovery Servs, Inc. v. United States, 72 F.3d 447, 453 (5th Cir. 1995) (plaintiff may not amend complaint to create jurisdiction by adding new plaintiff).

matter jurisdiction.  See Mem. 7 n.1.[2]  Nonetheless, based on three principal

arguments, she contends that she must be permitted to further prolong the case.

Plaintiff first suggests that the Court is limited in its ability to consider

factual materials in the same way that it would be if it were ruling on a 12(b)(6)

motion.  Opp. 7-8.  But this is clearly contrary to controlling authority in the

context of a factual challenge to the Court's subject matter jurisdiction, where the

Court has broad discretion to consider additional evidence, resolve factual

disputes, and enter findings pursuant to Fed. R. Civ. P. 52(a).  See Mem. 7 n.1.[3]

Plaintiff next asserts that, at least with respect to defendants' observation

that the Foreign Traffic Retirement Plan (and not Zavolta) made the relevant

investment decision, defendants are actually arguing about reliance (a merits issue)

rather than Article III standing (which implicates the Court's subject matter

jurisdiction).  Opp. 12-17.  This is incorrect.  Defendants have not addressed

plaintiff's reliance allegations in either their 12(b)(1) or 12(b)(6) motion.  For

purposes of the standing analysis, defendants assume *arguendo* the merits of the

---

[2]  See generally 11 Moore's Federal Practice § 56.30[2] (3d ed. 2009) at 56-256 ("unlike summary judgment, in which the movant must show entitlement to victory, the party asserting the presence of subject matter jurisdiction must show it to exist by a preponderance of the evidence or the case is dismissed").

[3]  See generally 2 Moore's Federal Practice § 12.30[4] (3d ed. 2009) at 12-44.1 ("when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence"); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 160, 188, 198 (3d ed. 2004) (similar).

Complaint's substantive claim, including that the alleged prospectus statements are misleading, that plaintiff read the prospectus, understood it in the manner alleged in the Complaint, and subjectively feels misled or, alternatively, that Zavolta otherwise would somehow be entitled to a presumption of reliance. The core point of defendants' standing argument is that none of this matters. Zavolta's former retirement plan, which is the relevant investor, purchased over $50,000 of Fund shares and thus the plan is outside the putative class (defined as "all persons who, during the Class Period, purchased class A shares in any one or more of the Lord Abbett Funds in an aggregate amount totaling less than $50,000 and paid a sales load of 5.75%, Compl. ¶ 87."). Because Class A shares are conceded to be the best choice for retirement plans and other persons investing more than $50,000 for the long term, neither Zavolta's former retirement plan nor the plan participants in the aggregate (who indirectly benefited from the retirement plan's selection of the optimal share class) could possibly have suffered any harm from the supposed wrongdoing alleged in the Complaint.

In a footnote, plaintiff also requests that, if the Court considers the facts proffered with defendants' Motion, she "be granted leave under [Fed. R. Civ. P. 56(f)] to conduct relevant discovery in support of her opposition." Opp. 12 n.2. "Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56(f) motion, a court may nonetheless look to Rule 56(f) for guidance in

considering the need for discovery on jurisdictional facts." <u>Gualandi v. Adams</u>,

385 F.3d 236, 244-45 (2d Cir. 2004).[4]  Plaintiff, however, has not made even the

most rudimentary effort to comply with Fed. R. Civ. P. 56(f).  She has:

- Failed to file an affidavit or even a motion requesting further discovery.  <u>Pastore v. Bell Tel. Co. of Pennsylvania</u>, 24 F.3d 508, 510-11 (3d Cir. 1994) (a 56(f) requires an affidavit, and "[a]n unsworn memorandum opposing a party's motion for summary judgment is not an affidavit.").

- Failed to indicate what discovery would be necessary or relevant, let alone how such discovery would enable her to stave off dismissal.  <u>See Lunderstadt v. Colafella</u>, 885 F.2d 66, 71 (3d Cir. 1989) (56(f) continuance requires identification of "what particular information is sought" and "how, if uncovered, it would preclude summary judgment") (citation and internal quotation marks omitted).

- Actively opposed defendant's motion to dismiss for lack of subject matter jurisdiction on the existing factual record.  <u>Rodriguez-Cuervos v. Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 23 (1st Cir. 1999) ("Ordinarily, a party may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful.") (citations and internal quotation marks omitted).

Accordingly, plaintiff should not be permitted to postpone the inevitable by

means of her footnote alluding to discovery.  <u>See Intern. Ass'n of Machs. v.</u>

<u>Northwest Airlines, Inc.</u>, 673 F.2d 700, 711-12 (3d Cir. 1982) ("If the plaintiff

does not meet and controvert the defendant's factual assertions by affidavits or

---

[4]     <u>See also</u> <u>Intern. Ass'n of Machs. v. Northwest Airlines, Inc.</u>, 673 F.2d 700, 711 (3d Cir. 1982) (If "the defendant contests the jurisdictional allegations … under oath, then it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions.  In doing so, a conclusory response will not suffice any more in this jurisdictional context than it would if the ultimate merits were at issue in a conventional summary judgment context.").

other sworn proofs, then the district court must determine whether it has subject matter jurisdiction based on the factual context presented by the defendant.").[5]

## B.  Zavolta Lacks Standing

Zavolta does not even address all of the grounds for holding that she lacks Article III standing.  The arguments she does raise are unavailing.

### 1.  Zavolta Was Not the Purchaser of Any Lord Abbett Shares

Zavolta concedes that she never owned any Lord Abbett fund shares personally and that the trustee of her former retirement plan was "the party that directly purchase[d] … the subject securities."  Opp. 9.  Further, she does not purport to sue derivatively on behalf of the trust.  Zavolta nonetheless insists that she may sue in her capacity as a former trust beneficiary.  Opp. 8-9 (citing cases).

Several of plaintiff's cases involve self-directed individual retirement accounts (IRAs) and focus principally on questions of *statutory* standing, i.e., whether a plaintiff qualifies as a "purchaser" within the meaning of Section 10(b) and Rule 10b-5.  Each is an important distinction.  Self-directed IRAs are not necessarily governed by trust law principles in the same manner as employer-

---

[5]     See also Gould Electronics Inc. v. U.S., 220 F.3d 169, 177-78 (3d Cir. 2000) (district court evaluated 12(b)(1) motion to dismiss on an "adequate factual record" consisting of the allegations of the complaint and certain supplementary materials filed by defendants; plaintiff's "request for additional discovery was properly denied as unnecessary and unwarranted because [the defendant] did not contest the allegations in the Complaint"); Cheyenne Arapaho Tribes of Oklahoma v. U.S., 558 F.3d 592, 596 (D.C. Cir. 2009); Gualandi, 385 F.3d at 244-45.

sponsored 401(k) plans.[6]  And as the Second Circuit recently recognized, whether a

plaintiff has "statutory standing as a 'purchaser' under section 10(b)" is "separate

and apart from the elements of constitutional standing," and the latter generally

requires that plaintiff have legal ownership of the claim.[7]

Other cases cited by Zavolta involved a beneficiary plaintiff alleging

misconduct by a trustee or other party related to the management of the retirement

plan.[8]  Such decisions are beside the point here given that there is no allegation of

misconduct by the plan trustee.  See Mem. 11 n.7.

As discussed in the Memorandum (pp. 9-12), the clear weight of authority

demonstrates that only the plan or plan trustee has standing to sue for injuries to

---

[6]    See Cowburn v. Leventis, 619 S.E.2d 437, 451 (S.C. App. 2005) ("an IRA
or custodial account is not a trust *per se*, but is treated as a trust for purposes of this
particular provision [§ 408] of the Internal Revenue Code.  In addition, we do not
find section 408 imposes particular fiduciary duties on a custodian of an IRA.")

[7]    W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100,
106 (2d Cir. 2008) (stating that Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,
128 S. Ct. 2531, 2542-44 (2008), "makes clear that the minimum requirement for
an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in,
the claim," id. at 108).

[8]    These decisions also focus on statutory standing.  James v. Gerber Products
Co., 483 F.2d 944, 945 (6th Cir. 1973) (plaintiff named trustee as defendant, id. at
945; court focused on whether plaintiff had met test for statutory standing, id. at
948); Norris v. Wirtz, 719 F.2d 256, 258, 261 (7th Cir. 1983) (plaintiff alleged
trustee misconduct and named trustee and successor trustee as defendants, id. at
257-58; court focused on whether plaintiff had satisfied statutory requirement for
standing, id. at 259-60); Hackford v. First Security Bank, 521 F. Supp. 541, 549 (D.
Utah 1981) (similar).  In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 204 (E.D. Pa.
2008), is completely inapposite as it merely held that a hedge fund that was the
legal owner of certain securities had standing to sue notwithstanding that the
fund's investment adviser made investment decisions on its behalf.

the trust allegedly caused by third parties.[9]  Zavolta laments that the trustee is not

currently pursuing her claim.  Opp. 11.  The trustee's inaction is unsurprising given

that (as noted elsewhere) the retirement plan is outside the putative class and thus

could not possibly have been harmed by the alleged wrongdoing.  But even setting

this aside, defendants respectfully submit that, as in the context of business

corporations, the appropriate judicial response is to dismiss the Complaint and

require Zavolta to request that the trustee of her former retirement plan pursue the

claim.  See Int'l Assoc. of Fire Fighters v. Clayton, 320 F.3d 849 (8th Cir. 2003);

Restatement (Second) of Trusts § 282(2) & cmt. e (1959).  It is not to invest

Zavolta personally with Article III standing she plainly lacks.

### 2. The Foreign Traffic Retirement Plan (Not Zavolta) Made the Only Relevant Investment Decision

Zavolta also concedes that it was the plan trustee who made the only

investment decision relevant to this case - selecting Class A shares of various Lord

Abbett funds as opposed to other share classes of those same funds.  Opp. 14

---

[9]     Whether Zavolta is the "real party in interest" under Fed. R. Civ. P. 17(a), Opp. 11 n.1, is immaterial because a plaintiff "must both be the real party in interest and have standing."  6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1542 at 330 (2d ed. 1990).  Regardless, Zavolta is plainly not the "real party in interest," and the Complaint can be dismissed on this basis as well.  See Fed. R. Civ. P. 17(a)(E) (trustee of an express trust may sue in his own name without joining beneficiaries); 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1548 at 375-76 (2d ed. 1990); Restatement (Second) of Trusts § 280 cmt. i (1959) ("In an action at law brought by the trustee against a third person, the beneficiary is not a necessary or proper party.").

(stating that the "plan trustee … selected the various Lord Abbett funds … and chose only the Class A shares option").  Zavolta proceeds to spend pages discussing cases that support the proposition that she can allege reliance indirectly based on the trustee's choice of Class A shares.  Opp. 12-17.

For standing purposes, defendants assume that plaintiff can allege reliance in this manner.  However, Zavolta's "indirect reliance" argument simply underscores that Zavolta must allege that the trustee of her former retirement plan was within the putative class of allegedly deceived persons.  She has failed to do so.

### 3. The Foreign Traffic Retirement Plan Does Not Have Standing to Raise the Claim Asserted in the Complaint

As already indicated, the undisputed facts demonstrate that, even assuming the sufficiency of the Complaint's merits allegations, Zavolta's former retirement plan and its trustee are outside the putative class as defined in the Complaint. Specifically, within approximately four years of the plan's inception, the plan exceeded the $50,000 threshold at which the Complaint itself concedes that Class A shares are an investor's best choice, whether that investor is an individual or (as in this case) a retirement plan.  See Mem. 8-9, 12-13.  Thus, the retirement plan is outside the putative class and the trustee could not have been deceived.  See Compl. ¶ 87 (limiting putative class to those who invested "less than $50,000").  In fact, as suggested by Zavolta's own substantive allegations, both the Foreign Traffic Retirement Plan and its beneficiaries in the aggregate would have been

worse off had the plan trustee invested in any available share class other than Class A.  Zavolta's insistence on maintaining this lawsuit is inexplicable.

**4.     Zavolta Does Not Allege that She Consulted a Broker or Intended to Be a "Long-Term Investor"**

In light of Zavolta's concession that it is the trustee of her former retirement plan who must have been deceived - and the retirement plan that must have been harmed - it seems unnecessary for the Court to reach the points addressed in this section of the Memorandum, to which Zavolta in any event does not respond.

**ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6): THE COMPLAINT <u>FAILS TO STATE A CLAIM</u>**

Plaintiff also has failed to resuscitate her claim on the merits.

**I.     MOST OF THE COMPLAINT MIRRORS A PLEADING DISMISSED BY THE SIXTH CIRCUIT IN <u>BENZON</u>**

Notwithstanding plaintiff's half-hearted efforts to distinguish <u>Benzon v. Morgan Stanley Distribs., Inc.</u>, 420 F.3d 598 (6th Cir. 2005), it is clear that, apart from plaintiff's allegations regarding the investment performance table, the Complaint here is substantively identical to the pleading dismissed in that case.  In the end, plaintiff is left to argue that the Court "is not bound to follow [<u>Benzon</u>]." Opp. 23.  But <u>Benzon</u> is a cogent and straightforward application of settled legal principles and SEC pronouncements that this Court has previously recognized as persuasive authority.  <u>See</u> Mem. 15 (discussing <u>Ulferts</u>).

## II. PLAINTIFF FAILS TO PLEAD MATERIALITY WITH RESPECT TO HER ALLEGATIONS THAT THE INVESTMENT PERFORMANCE TABLES DO NOT REFLECT THAT CLASS B SHARES CONVERT INTO CLASS A SHARES AFTER EIGHT YEARS

Plaintiff offers two principal responses to defendants' showing that there is no substantial likelihood that any error in the investment performance table altered the total mix of information. Mem. 29-32.

1.     Plaintiff contends that "materiality is an intensely factual issue, and the Third Circuit has held that where there is room for differing opinions on the issue of materiality, the question should be left for jury determination." Opp. 26-27 (citation and internal quotation marks omitted). In fact, the Third Circuit has regularly affirmed district court decisions granting motions to dismiss on the issue of materiality.[10] Prior reluctance to grant motions to dismiss based on materiality in some cases resulted largely from a conception of the pleading standards that the Supreme Court recently "retire[d]." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007). Previously, a motion to dismiss could not be granted unless the movant showed "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S.

---

[10]     <u>See, e.g.</u>, <u>In re Merck & Co. Securities Litigation</u>, 432 F.3d 261, 268-71 (3d Cir. 2005); <u>In re NAHC Sec. Litig.</u>, 306 F.3d 1314, 1330 (3d Cir. 2002); <u>In re Rockefeller Ctr. Properties, Inc. Sec. Litig.</u>, 184 F.3d 280, 290 (3d Cir. 1999).

41, 45-46 (1957).[11]  Now, "a complaint must contain sufficient factual matter,
accepted as true, to state a claim for relief that is plausible on its face."  Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (May 18, 2009) (citation and internal quotation marks
omitted).  When the facts alleged are merely "consistent with a defendant's
liability," id. at 1949 (citation and internal quotation marks omitted), but there are
other significantly "more likely explanations," plaintiff's allegations do not
"plausibly establish" a claim.  Id. at 1951.

2.      Plaintiff asserts that the FINRA mutual fund calculator cited in the
newspaper article that pointed out the alleged error in the investment performance
tables was "not available until the midpoint of the Class Period."  Opp. 28 n.7.  But
the supposed unavailability of this particular calculator is unimportant.  The article
demonstrates that the information necessary for investors and/or their presumably
sophisticated financial intermediaries to "d[o] the math," In re Merck & Co. Sec.
Litig., 432 F.3d 261, 271 (3d Cir. 2005), and select the optimal share class - with the
FINRA calculator or some other calculator - unquestionably was set forth at all
times in the Funds' disclosure documents.  See Mem. 31-32.

## III.    THE COMPLAINT FAILS TO PLEAD SCIENTER

Plaintiff also fails to salvage her inadequate scienter allegations.

---

[11]      See also Shapiro v. UJB Financial Corp., 964 F.2d 272, 280 (3d Cir. 1992)
(applying the "no set of facts" test in a 10b-5 case).

**A.    The Complaint's Allegations Do Not Create a Strong Inference**

The Opposition restates Zavolta's scienter allegations at length.  Opp. 28-32.

But it cannot obscure that they are nothing more than conclusory allegations of

wrongdoing coupled with general "motive and opportunity" allegations.  The Third

Circuit recently reaffirmed that such allegations are insufficient.  "Motives…

generally possessed by most corporate directors and officers do not suffice; instead,

plaintiffs must assert a concrete and personal benefit to the individual defendant

resulting from this fraud."  <u>Institutional Investors Group v. Avaya, Inc.</u>, 564 F.3d

242, 278 (3d Cir. 2009) (citations and internal marks omitted).  Even when (unlike

in this case) a pleading does state individual motive with particularity:

> Individuals not infrequently have both strong motive and ample
> opportunity to commit bad acts – and yet they often forbear…. [T]he
> bottom line question is not whether defendants were likely to have a
> motive to commit fraud, but whether they were at least as likely as not
> to have acted on that motive and actually committed fraud.

<u>Id.</u> at 277-78.

**B.    The Complaint's Scienter Allegations Are Based on Improper
        Group Pleading**

Plaintiff concedes that "group pleading" is forbidden by controlling

precedent, she acknowledges that she "does not attempt to attribute liability to

individual officers or directors," and she admits that she is relying solely on a

theory of "collective scienter."  Opp. 37 n.10.

As discussed in the Memorandum, however, an inference of collective scienter is available (if ever in the Third Circuit) only for truly extreme factual circumstances not present here. Mem. 37-38. Plaintiff's suggestion that a collective scienter inference should be drawn merely because the Lord Abbett Funds were defendants' "core product," Opp. 33, 36, cannot be taken seriously. Accepting it would effectively eliminate the scienter requirement whenever a plaintiff alleges that an investment adviser makes a false statement in a mutual fund prospectus, or indeed when any corporate defendant is alleged to make any misstatement regarding its principal line of business.

## C.   Other Indisputable Facts Undermine Any Possible Inference of Scienter

Reaching beyond the allegations of her own Complaint, plaintiff asks the Court to infer scienter from recent enforcement actions brought by regulatory authorities against brokers who improperly recommended Class B shares to their customers when only Class A shares would have been suitable. Opp. 33-36 (requesting that the Court judicially notice enforcement actions).

But such enforcement actions actually undermine the inference of scienter. For one thing, plaintiff cannot plausibly explain why defendants would have attempted to commit fraud when they knew the proverbial policeman was looking over their shoulders. Moreover, the enforcement actions underscore that putative class members' brokers had an independent and vigorously enforced obligation to

14

provide particularized advice about the suitability of specific share classes.  <u>See</u> Mem. 20-21 & n.16.  In light of this obligation, the alleged misstatement in the investment performance table in the prospectuses would be a most ineffective (and thus implausible) way of carrying out the supposed fraudulent scheme.  <u>See</u> Mem. 39.  In any event, other sections of the prospectus and SAI clearly attempted to inform investors in the putative class that Class A shares were not their best choice.  <u>See</u> Mem. 30-31, 39.  Mistake, rather than scienter, is the only plausible inference here.  Mem. 39-40.

## <u>CONCLUSION</u>

The Complaint should be dismissed without leave to amend.

Respectfully submitted,

K&L Gates LLP

By:  <u>s/ Christopher A. Barbarisi</u>
Christopher A. Barbarisi
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ  07102-5252
(973) 848-4000

Jeffrey B. Maletta
Nicholas G. Terris
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20005-1600
(202) 778-9000

*Counsel for Defendants*